NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PRIVACASH, INC.,**
*Plaintiff-Appellant,*

v.

**AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., AND AMERICAN EXPRESS PREPAID CARD MANAGEMENT CORPORATION,**
*Defendants-Appellees.*

---

2011-1027

---

Appeal from the United States District Court for the Western District of Wisconsin in Case No. 09-CV-0391, Magistrate Judge Stephen L. Crocker.

---

Decided: August 11, 2011

---

THOMAS A. LEWRY, Brooks Kushman P.C., of Southfield, Michigan, argued for plaintiff-appellant. With him on the brief were JOHN M. HALAN and JOHN S. LEROY.

PETER J. ARMENIO, Quinn, Emanuel, Urquhart & Sullivan, LLP, of New York, New York, argued for defedants-appellees. With him on the brief was JOHN C. SPACCAROTELLA.

_____

Before LOURIE, BRYSON, and LINN, *Circuit Judges*.

BRYSON, *Circuit Judge*.

Privacash, Inc., appeals from a decision of the United States District Court for the Western District of Wisconsin entering summary judgment that certain gift cards sold by the American Express Company and its affiliates do not infringe United States Patent No. 7,328,181 ("the '181 patent"). The court held that the accused cards lacked a "non-personalized cardholder name" and were not "bearer instruments" as required by the asserted claims. We conclude that the cards are not "bearer instruments," and we therefore affirm. We do not address whether the cards feature a "non-personalized cardholder name."

I

The primary objective of the '181 patent is to create an anonymous and untraceable means for transacting purchases over the internet. '181 patent, col. 1, ll. 47-51. The patent recognizes that most internet transactions require a credit card, and therefore anonymous internet purchases are almost impossible to make. *Id.* col. 1, ll. 19-46. The patent's solution to that problem is a prepaid purchasing card similar to a prepaid phone card. *Id.* col. 2, l. 65. To enable purchases to be made anonymously, the purchasing card is not personalized and is described as being a "'bearer card' which means it is as good as cash." *Id.* col. 3, l. 59. A consumer can buy the purchas-

ing card using cash or a personal credit card, but the "account number on the purchasing card . . . is not part of the transaction, and thus is not linked to the consumer." *Id.* col. 3, ll. 56-58. After buying the card, the consumer can activate the card by providing only the account number on the card. *Id.* col. 4, ll. 20-21.

American Express distributes gift cards that can be purchased in retail locations. The cards contain embossed phrases such as "CELEBRATE," "INDULGE," or "A GIFT FOR YOU" instead of the cardholder's name. The gift cards are inactive until someone purchases them. After the card is purchased and activated, it can be used until the value of the card is exhausted. If the card is reported to American Express as lost or stolen, it will be deactivated. In that event, the gift card can be replaced with a new card that has a value equal to the remaining balance on the card at the time it was reported lost or stolen. If the card is not reported lost or stolen, it can be used by anyone in possession of the card.

Privacash filed suit against American Express asserting that the American Express gift cards infringed the '181 patent. Claim 1 was the only asserted independent claim. That claim recites the following method:

1. A method of transacting a purchase, comprising:

distributing a plurality of unfunded purchase cards from a purchase card provider to a plurality of purchase card outlets, wherein each of the purchase cards is a bearer instrument having an associated account number issued by a major branded credit card organization, an expiration date and a non-personalized cardholder name se-

lected by the purchase card provider printed thereon, wherein the purchase card does not include information identifying the specific perspective cardholder, wherein information associated with each of the purchase card accounts is maintained in a software implemented application operated by the purchase card provider;

issuing a purchase card to a cardholder at the a purchase card outlet;

contacting the purchase card provider to fund and activate the purchase card account of specific purchase card issued with a software implemented application or via the telephone; and

transacting a cardholder purchase at any one of a number of retailers not associated with the purchase card outlet which accepts credit cards of the major branded credit card organization, wherein the cardholder presents the purchase card and the retailer contacts the purchase card provider over a network connection to interface with the software implemented application transmitting the purchase amount and the purchase card account number without requiring the retailer to collect and transmit personalized cardholder identifying information, to verify using the software implemented retail application that the purchase card is unexpired and that the purchase amount does not exceed the cardholder's funding limit, whereupon the purchase card account information will be debited by the amount of the purchase and the account of the retailer will be electronically credited completing the purchase transaction.

American Express moved for summary judgment of noninfringement on various grounds, including that its gift cards were not "bearer instruments" because they could be canceled or deactivated.  Privacash argued that the proper construction of "bearer instrument" is a card that "may be used up to the limit available on the card by anyone in possession of it while the card's account is funded and activated."

The district court held that the proper construction of "bearer instrument" excludes cards that can be canceled or deactivated.  The court observed that the bearer cards in the patent were described as being as good as cash, and that the primary objective of those cards was to facilitate anonymous transactions.  That objective would be compromised, the district court explained, if the purchaser could cancel the card by identifying himself as the owner of the card and requesting that it be canceled.  The district court further noted that the specification provided that the cards claimed in the patent "may be used up to the limit available on the card by anyone in possession of the card," '181 patent, col. 3, ll. 61-62, and that possession of the American Express gift cards did not enable such use because those cards could be canceled at the owner's request.

Privacash appealed to this court.

## II

We agree with the district court's claim construction. As the term is used in the patent, a "bearer instrument" or "bearer card"[1] is "as good as cash" and "may be used up

---

[1]    As Privacash acknowledges, the patent uses the terms "bearer card" and "bearer instrument" interchangeably.

to the limit available on the card by anyone in possession of the card." '181 patent, col. 3, ll. 56-64. The purpose of that requirement is to ensure that the account number on the bearer card "is not linked to the consumer" so that the card "provides a means for preserving the anonymity of the purchaser in future purchases." *Id.* In order to activate the bearer card, the consumer need only provide the card account number to a purchasing intermediary and "[n]o further information is requested of the consumer." *Id.* col. 4, ll. 18-21. After activation, the consumer can make anonymous purchases with the bearer card, as can anyone in possession of the card. Those purchases, the patent explains, "should be 'untraceable' simulating a 'cash' transaction which typically occurs in a typical 'bricks and mortar' retail setting." *Id.* col. 1, ll. 49-51.

The patent's use of the term "bearer instrument" is consistent with the usual meaning given to "bearer bonds" or "bearer securities" by financial dictionaries. Proof of ownership for a "bearer security" is "possession of the security certificate." Oxford University Press, *A Dictionary of Finance and Banking* 42 (Jonathan Law ed., 4th ed. 2008). That feature "enables such bonds to be transferred from one person to another without registration" and allows owners to "preserve their anonymity." *Id.* In the case of "bearer bonds" or "coupon bonds," possession denotes ownership, "so whoever presents the coupon is entitled to the interest." John Downes & Jordan Elliot Goodman, *Dictionary of Finance and Investment Terms* 58, 149 (7th ed. 2006).

Based on the intrinsic and extrinsic evidence, we conclude that "bearer cards" are those that cannot be canceled or deactivated. If the lawful owner of a bearer card can contact the issuing institution and deactivate the

card, then the card would cease to be a bearer card because it could not "be used up to the limit available on the card by anyone in possession of the card." '181 patent, col. 3, ll. 61-62. While legal title to a "bearer instrument" may not always transfer with possession, the possessor of a "bearer instrument" effectively owns the instrument due to the lack of ownership registration. That characteristic is vital to the primary advantage of the invention— anonymity.

Privacash argues that the bearer cards of its patent can be deactivated "through expiration." But there is a critical difference between expiration and deactivation prior to a previously designated expiration date. The expiration date of the bearer card in the patent is set when the card is activated, and card expiration will affect lawful owners and unlawful possessors equally. By contrast, deactivation allows lawful owners to nullify any value the card has to a possessor and to retrieve the remaining monetary value on the card. As such, simple possession of an American Express gift card does not constitute effective ownership of the card.

Privacash argues that the same is true of a check made out to bearer or cash because the Uniform Commercial Code ("UCC") states that customers have a right to stop payment of "any item drawn on the customer's account." U.C.C. § 4-403 (2002). Irrespective of any special rights that a customer may have to stop payment for items drawn on his account, a check that can be nullified is not a "bearer instrument" because the check cannot "be used . . . by anyone in possession of the [check]." '181 patent, col. 3, ll. 61-62. Indeed, nowhere in the UCC is such a check described as a "bearer instrument." Moreover, a personal check made out to cash does not achieve

the anonymity that is a principal purpose of the patented invention.

By contrast to a personal check made out to cash, a cashier's check payable to "cash" or "bearer" is a bearer instrument. The UCC explains that a customer does not have the right to stop payment on a cashier's check that has been debited from the customer's account. U.C.C. § 4-403 cmt. 4 (2002). That does not mean that the issuing bank must pay the possessor of such a cashier's check if the bank "has a reasonable doubt whether the person demanding payment is the person entitled to enforce the instrument." U.C.C. § 3-411(c)(iii). But absent evidence creating a reasonable doubt as to title, possession of such a cashier's check would be proof of ownership.

American Express proffered evidence demonstrating that it is able to deactivate its gift cards in response to requests from rightful card owners. Upon contacting American Express, the owner is required to provide the gift card account number and other identifying information to establish that he is the card's true owner. Privacash has failed to submit any evidence indicating that American Express is able to achieve that functionality without compromising anonymity. Thus, the available evidence indicates that American Express does not treat possession of the gift card as proof of ownership. We therefore conclude that the district court properly entered summary judgment of noninfringement.

**AFFIRMED**